UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE PETITION OF PINEWOOD TECHNOLOGIES ASIA PACIFIC LIMITED FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782 | Case No. |

**DECLARATION OF ABIGAIL HEALEY IN SUPPORT OF
PINEWOOD TECHNOLOGIES ASIA PACIFIC LIMITED'S PETITION
FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782**

I, Abigail Healey, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am a practising solicitor in England and a partner of the law firm Quillon Law LLP in London, England. I represent Pinewood Technologies Asia Pacific Limited ("PWAP") in litigation filed against Pinewood Technologies UK ("PWUK") in the High Court of Justice Business and Property Court of England and Wales, Technology and Construction Court.

2. I submit this declaration in support of the Petition submitted by PWAP for an order pursuant to 28 U.S.C § 1782 to take discovery from William Berman, the Chief Executive Officer of Pendragon PLC.

3. The knowledge set forth herein has been acquired during my representation of PWAP. Where information presented was derived from a source other than my client, I have endeavoured to provide a citation to the source and include it as an exhibit hereto.

A. **Facts to be Alleged and Supporting Exhibits**

4. Attached hereto as Exhibit 1 is a true and correct copy of the Witness Statement of David Donald Neilsen, dated June 16, 2023, filed in Pinewood Technologies Asia Pacific

Limited v. Pinewood Technologies PLC, Case No. HT-2022-000244, in the High Court of Justice in England.

5. Attached hereto as Exhibits 2 and 3 are true and correct copies of the LinkedIn profiles of David Neilsen and Josephine Lee, respectively, reflecting their professional experience.

6. Attached hereto as Exhibit 4 is a true and correct copy of a March 2020 slide deck provided by PWAP in the context of an investment considered by PWUK.

7. Attached hereto as Exhibit 5 is a true and correct copy of the Reseller Agreement, entered into on July 28, 2017, between PWUK and PWAP.

8. Attached hereto as Exhibit 6 is a true and correct copy of the Particulars of Claim, dated August 10, 2022, filed in Pinewood Technologies Asia Pacific Limited v. Pinewood Technologies PLC, Case No. HT-2022-000244, in the High Court of Justice in England.

9. Attached hereto as Exhibit 7 is a true and correct copy of the Second Reseller Agreement, dated August 1, 2019.

10. Attached hereto as Exhibit 8 is a true and correct copy of the judgment of Mrs Justice Joanna Smith DBE dated October 13, 2023.

11. PWAP believes that it has a claim against PWUK in fraud and/or fraudulent misrepresentation and intends to file such a claim in England if it is supported by the evidence sought by this Petition. In English law, in order for a claimant to succeed in fraudulent misrepresentation he must establish that: (i) the defendant made a representation that was false; (ii) the defendant knew the representation was false or was reckless as to its truth or falsity; and (iii) the defendant intended that the representation would induce the claimant to act or refrain from acting. If the evidence obtained shows

    that PWUK had no intention of performing its contractual obligations while representing to PWAP that it would do so in order that PWAP continued to perform its obligations, PWAP would have a claim in fraud against PWUK.  In particular, PWAP considers that PWUK purposefully induced PWAP to continue to sink time and money into signing up customers—especially in Japan—while PWUK impaired their ability to deliver functional software.  For customers in South-East Asia who had gone live with the DMS, significant gaps in the implementation remained.  In consequence, PWAP was unable to collect the full user fees from some customers, and tried to implement a separate system as a work-around solutions for some requirements where this was possible.  PWAP considers that a course of dealing evolved whereby PWAP refrained from claiming breach for PWUK's failure to make adjustments to the software, and PWUK did not demand immediate payment of its invoices to PWAP, since PWAP's liquidity was affected by PWUK's own non-performance.  This left PWAP in a vulnerable position, but it trusted the good faith of its counterpart, and proceeded to fulfill its mandate to expand DMS users in the Asia Pacific territories.

12. PWAP considers that there is reason to belie that PWUK deliberately delayed addressing Development Items after new management took over at Pendragon LLC (PWUK'S parent corporation) in 2019 when its CEO of 30 years retired.  PWAP's position is that it initially became suspicious when it received a flurry of questions from PWUK about the market potential for the territories covered by the Asia Pacific Reseller Agreements, but that it received assurances from PWUK that it would not terminate the Reseller Agreements with PWAP because the buyout clauses in the Reseller Agreements were cost-prohibitive.

13. Attached hereto as Exhibit 9 is a true and correct copy of a September 16, 2019 email from David Neilsen to Paul Hopkinson, attaching PWAP's accelerated growth plan.

14. Attached hereto as Exhibit 10 is a true and correct copy of an email dated February 25, 2020, from Pete Thomas to Josephine Lee.

15. Attached hereto as Exhibit 11 is a true and correct copy of an email dated March 2, 2020, from PWUK's CFO to Josephine Lee.  That same day, David Neilsen had a meeting with PWUK executives to discuss the potential of the Asia Pacific market and how PWAP intended to staff and fund the growth.  PWAP was cooperative, as PWUK led PWAP to believe that it was soliciting this information to evaluate investing in PWAP.

16. PWAP possesses additional communications showing that, while the potential investment remained under evaluation, PWUK's CFO requested PWAP to start forecasting DMS users by month.  PWAP complied with the request in the spirit of partnership, though PWAP now believes that there was never any real consideration of the investment proposal at all.  At an April 9, 2020 meeting, PWUK informed PWAP that due to the pandemic, there was no longer an appetite for making an investment in PWAP, which was unusual considering PWUK's unquenchable thirst for data about the Asia Pacific region and PWAP's business plans.  PWAP accepted its business partner's answer at face value and asked for a firm commitment on financial accommodations and completion of the Development Items for the continued delays in the DMS for Thailand, Vietnam and Japan.  PWUK agreed and asked PWAP to send a proposal with dates.

17. Attached hereto as Exhibit 12 is an email dated June 17, 2020, from Pete Thomas to Josephine Lee, requesting all PWAP's current proposals to customers.

18. Attached hereto as Exhibit 13 is a true and correct copy of an email dated November 3, 2021, from Paul Hopkinson to David Neilsen.

19. PWAP sued PWUK for breach of contract in July 2022; PWUK has responded by disavowing its obligation to make software adjustments based on locality. During this litigation, PWUK made Requests for Information, including identification of all outstanding Development Items. Attached hereto as Exhibit 14 is a true and correct copy of the Schedule of Development Items identified by PWAP with PWUK's responses.

20. Attached hereto as Exhibit 15 is a true and correct copy of an article published by Sky News, dated August 13, 2022, entitled "US car dealer Lithia Motors unmasked as mystery bidder for Pendragon," available at https://news.sky.com/story/us-car-dealer-lithia-motors-unmasked-as-mystery-bidder-for-pendragon-12671076.

21. Attached hereto as Exhibit 16 is a true and correct copy of a press release dated September 18, 2023, entitled "Lithia & Driveway to Form Strategic Partnership with Pinewood Technologies and Acquire Pendragon PLC's Fleet Management and UK Motor Divisions," available at https://www.prnewswire.com/news-releases/lithia--driveway-to-form-strategic-partnership-with-pinewood-technologies-and-acquire-pendragon-plcs-fleet-management-and-uk-motor-divisions-301929883.html. According to information provided by Pendragon to its shareholders, the specific entity set to acquire Pendragon is Lithia UK Holding Limited, a wholly-owned subsidiary of Lithia Motors, Inc.

22. PWAP seeks evidence in order to support a claim for fraud and/or fraudulent misrepresentation. PWAP considers that PWUK made representations to PWAP of an intention to perform its contractual obligations and complete the outstanding Development Items in circumstances where, it is potentially to be inferred, there was in

fact no such intention.    English courts require reasonably credible material for an allegation of fraud to be pleaded.  An allegation of fraud must also be made unequivocally, with sufficient particularity for the defendant to understand the case that he has to meet.  Absent such reasonably credible material, it is not possible to bring a claim in fraud and stringent professional obligations govern lawyers who potentially advance such a claim.  A claim with insufficient cogent evidence is susceptible to be struck out or reverse summary judgment entered against it.

23. The Petition seeks records from an officer of the UK parent company of defendant PWUK.  Neither the officer nor Pendragon is a party to the English lawsuit and therefore is not required to make disclosures.

24. English courts do not have the power to order third parties to make pre-action disclosures in support of a contemplated claim, unless the following criteria are met: (i) the applicant must demonstrate a good arguable case that a wrong has been committed; (ii) the respondent must be "mixed up" in the wrongdoing; (iii) the respondent must be able to provide the necessary information to enable the wrongdoer to be pursued; and (iv) it must be appropriate and proportionate in the circumstances (this is known as a *Norwich Pharmacal* order).  The English courts also have a power to order third parties to produce documents under CPR r. 31.17 but this is exercised with caution and does not apply to third parties outside the jurisdiction. Even where pre-action disclosure is permitted, depositions are not part of the disclosure procedures in England and I would not be able to obtain the testimony of Mr. Berman.

25. The English courts could not enforce a disclosure order against Mr. Berman given English courts do not ordinarily have extraterritorial competence.  For the same reason,

English courts could not compel the appearance of Mr. Berman, who resides in Florida, not within the territorial boundaries of England.

26. It is expected that the evidence obtained from Mr. Berman in this proceeding will be admissible in the English Court. The courts in England and Wales are receptive to evidence obtained through U.S. judicial assistance and routinely accept documents and testimony obtained from this procedure.

27. Applying for assistance via § 1782 does not circumvent any law of England. There is no specific policy in English law that would prohibit use of the type of record or testimony sought here; to the contrary, the evidence sought is of the type ordinarily used to support and defend against commercial claims.

I declare under the penalty of perjury of the laws of the United States that the foregoing is true and correct. Executed on 19 January 2024 London, England.

_____

Abigail Healey