# EXHIBIT 6

HT-2022-000244

**IN THE HIGH COURT OF JUSTICE**
**BUSINESS AND PROPERTY COURTS**
**OF ENGLAND AND WALES**
**TECHNOLOGY AND CONSTRUCTION COURT**

**BETWEEN:**

PINEWOOD TECHNOLOGIES ASIA PACIFIC LIMITED
**Claimant**

-and-

**PINEWOOD TECHNOLOGIES PLC**

**Defendant**

**PARTICULARS OF CLAIM**

**I.    THE PARTIES AND SUMMARY OF THE CLAIMS**

1. The Claimant ("**Pinewood AP**") is a company incorporated under the laws of Hong Kong and whose registered address is 31/F, Hysan Place, 500 Hennessy Road, Causeway Bay, Special Administrative Region of Hong Kong, China.

2. The Defendant ("**Pinewood UK**") is a company incorporated under the laws of England and Wales and whose registered address is Loxley House, 2 Oakwood Court, Little Oak Drive, Annesley, Nottingham, Nottinghamshire, NG15 0DR. Pinewood UK is the software division of the UK-headquartered automotive group, Pendragon, which is listed on the London Stock Exchange. Pinewood UK and Pinewood AP are not related companies.

3. These claims relate to Pinewood UK's primary product, Pinewood Dealer Management System ("**Pinewood DMS**"; previously branded as Pinnacle DMS). Pinewood DMS is an all-in-one dealer management system, hosted on Pinewood UK's servers in the UK and delivered remotely to customers via Software as a Service ("**SaaS**").

4. Whilst Pinewood UK sells the Pinewood DMS to motor vehicle dealerships within the UK market, it has contracted with independent partners known as "resellers", to resell the Pinewood DMS to motor vehicle dealerships in certain international territories, and to whom Pinewood UK would grant a licence for that purpose. Pinewood AP's sole business was as the exclusive reseller of the Pinewood DMS to motor vehicle dealerships within certain territories in the Asia Pacific region.

5. Pinewood AP and Pinewood UK were parties to:

    5.1 a reseller agreement dated 28 July 2017, as amended on 28 March 2018 and 8 January 2019 (the "**First Reseller Agreement**"); and

    5.2 a further reseller agreement dated 8 January 2019, as amended on 6 June 2019 (the "**Second Reseller Agreement**");

    (collectively, the "**Reseller Agreements**" and each individually, a "**Reseller Agreement**").

6. Pinewood UK has committed various breaches of the Reseller Agreements. As a result of Pinewood UK's breaches, Pinewood AP has suffered loss and damage. Pinewood AP seeks to recover sums in respect of such loss and damage caused to it by Pinewood UK.

7. Termination notices have been sent under both Reseller Agreements, by either one or both of the parties.

    7.1 Pinewood UK sent a Legal Notice to Pinewood AP on 27 May 2022 stating that it had terminated the First Reseller Agreement because Pinewood AP had failed to pay certain invoices within 30 days of a first notice dated 26 April 2022.

    7.2 Pinewood AP sent a Legal Notice to Pinewood UK on 19 July 2022, terminating the Second Reseller Agreement, for the reasons set out at paragraph 34.

7.3 Pinewood UK sent a Legal Notice to Pinewood AP on 21 July 2022, denying that Pinewood AP had the right to terminate the Second Reseller Agreement, and asserting that Pinewood AP's notice of termination was itself a repudiatory breach, which it had decided to accept.

**II.   TERMS OF THE RESELLER AGREEMENTS**

8.  The Reseller Agreements were signed on behalf of Pinewood AP by Mr David Neilsen, a director of Pinewood AP, and on behalf of Pinewood UK by Mr Paul Hopkinson, a director of Pinewood UK. The Reseller Agreements were subject to English law and the exclusive jurisdiction of the English Courts (by clause 20.10), and were in materially identical terms, save that the First Reseller Agreement covers the "Territories" (as defined) of Hong Kong SAR, Guam, Thailand, Macau SAR, the Philippines and Vietnam (the Philippines and Vietnam having been added by an amendment to the First Reseller Agreement dated 8 January 2019) whereas the Second Reseller Agreement covers the "Territory" (as defined) of Japan.

9.  The material terms of the Reseller Agreements were as follows.

**A.   Exclusive Appointment**

10. By clause 3.1, Pinewood AP was appointed by Pinewood UK as the "*exclusive reseller of the* [Pinewood DMS] *in the Territory for the Term*",[1] with the right to sell Pinewood DMS Services "*to and only for use by Motor Vehicle Dealerships, and only for use with respect to Motor Vehicle Dealership outlets physically located within the Territory*" (clause 3.3).

11. Clause 4 set out competition restrictions that applied to the parties during the Term. In particular, clause 4.2(c) placed an obligation on Pinewood AP not to

---

[1] The "Term" is defined in clause 1.1 as the period of the Reseller Agreement "*commencing on the Commencement Date and ending on expiry or termination*" of the Reseller Agreement. The Commencement Date is the date of the Reseller Agreement.

- 3 -

"*for the Term, promote, market, sell, licence, resell, supply or otherwise provide or deal in any software, licence or services to or in relation to Motor Vehicle Dealerships, which is or are similar to or may compete with the* [Pinewood DMS] *and/or* [Pinewood DMS] *Services…*".

12. By clause 5, Pinewood AP was to achieve certain targets for new users of the Pinewood DMS for each year that the Reseller Agreements were in force.

13. Clause 6 set out the terms on which the Pinewood DMS licence was granted to Pinewood AP.

14. Clause 7 specified the basis on which Pinewood AP was entitled to resell the Pinewood DMS:

    14.1 by clause 7.1 the "*resale of the* [Pinewood DMS] *shall be by way of* [Pinewood AP] *contracting on its own account with Motor Vehicle Dealerships to provide* [Pinewood DMS] *Services using the* [Pinewood DMS] (clause 7.1(a));

    14.2 Pinewood UK would enter into "*Customer Contract*[s]" as defined in clause 1.1 of the Reseller Agreements and Pinewood AP was to "*at all times act as principal, and not as agent of* [Pinewood UK], *in relation to all Customer Contracts*" (clause 7.1(c)).

    14.3 by clause 7.2, the parties agreed that Customer Contracts should *inter alia*:

        14.3.1 "*be in writing, duly signed by all parties, and legally binding under the laws of the Territory*" (clause 7.2(a));

        14.3.2 "*be in such form as* [Pinewood AP] *may reasonably use, having taking* (sic) *appropriate legal advice in the Territory, but* [Pinewood

- 4 -

UK] *reserves the right to specify the form of all Customer Contracts*" (clause 7.2(b)); and

14.3.3 "*be on arm's length commercial terms, but* [Pinewood AP] *is otherwise free to set the price at which it provides the* [Pinewood DMS] *Services, as long as such services are not provided as a loss-leader*" (clause 7.2(f)).

15. Clause 8 set out the basis on which Pinewood AP was and is liable to make payment of monthly fees in USD, or THB in respect of Thailand, to Pinewood UK, on a fixed basis proportionate to the number of Pinewood DMS user accounts provided from time to time by Pinewood AP under a Customer Contract.

**B.  Pinewood UK's obligations under the Reseller Agreements**

16. Clause 10 set out Pinewood UK's 'General Obligations'. These included, at clause 10.5 ("Future Developments"), obligations that Pinewood UK:

16.1 "*keep* [Pinewood AP] *advised about all releases and further developments of the* [Pinewood DMS] *which may assist* [Pinewood AP] *in the successful operation and promotion and sale of* [Pinewood DMS] *Services*" (the "**Update Obligation**");

16.2 "*make any necessary changes to ensure that the* [Pinewood DMS] *meets the legal requirements of the Territory, provided that* [Pinewood AP] *provides* [Pinewood UK] *reasonable notice and detail of the changes required*" (the "**Legal Requirements Obligation**"); and

16.3 use "*its best endeavours to make any necessary changes to ensure that the* [Pinewood DMS] *meets the vehicle manufacturer franchise standards of the franchises held by Contracting Customers*" (the "**Franchise Standards Obligation**").

- 5 -

17. Pinewood UK was required to implement changes necessary for the operation and sale of the Pinewood DMS in the contracted territories ("**Development Items**"). These included the following:

   17.1 Development Items that were necessary to ensure that the Pinewood DMS complied with the legal requirements of the Territory, pursuant to the Legal Requirements Obligation;

   17.2 Development Items that were necessary to ensure that the Pinewood DMS complied with the vehicle manufacturer franchise standards of the franchises held by Contracting Customers ("**Integration Items**"), pursuant to the Franchise Standards Obligation; and

   17.3 Other Development Items necessary to ensure that the Pinewood DMS could operate and be sold in a particular market ("**Localisation Items**"). Localisation Items were required for practical reasons, rather than because of any specific local legal obligation.[2]

18. It was an implied term, and a general obligation of Pinewood UK within Clause 10 of the Reseller Agreements, that Pinewood UK was required to complete Localisation Items (the "**Localisation Obligation**"). The Localisation Obligation was necessary to give business efficacy to the Reseller Agreements because Pinewood AP was unable to launch the Pinewood DMS in a Territory unless and until the Localisation Items were completed by Pinewood UK.

19. The Reseller Agreements also contained statutory implied terms, implied by the Supply of Goods and Services Act 1982 ("**SGSA**"). In particular, Pinewood UK was subject to an implied term:

   19.1 to carry out services, including the services to be provided by it under clause 10.5, with reasonable care and skill, under section 13 SGSA; and

---

[2] As an example of a Localisation Item, in Japan, currency rounding is required because customers cannot invoice their own customers in Japanese yen with decimals.

- 6 -

19.2 to carry out any services for which the time for performance was not set by the Reseller Agreements within a reasonable time, under section 14 SGSA.

**C.      Termination**

20. Clause 14 set out the circumstances in which the Reseller Agreements could be terminated for cause, including:

    20.1 immediately by Legal Notice, where the other party was in "*repudiatory breach*" of the Reseller Agreement, at clause 14.1;

    20.2 immediately by Legal Notice or on the expiry of a 'remedy period' set by the non-breaching party, in the case of a remediable breach, at clause 14.2;

    20.3 in the case of repeated breaches, on the re-occurrence of such breaches within a time set by Legal Notice to the breaching party at clause 14.3; and

    20.4 by Pinewood UK, in the event that any sum payable by Pinewood AP was overdue and unpaid within 30 days of the provision of a Legal Notice by Pinewood UK demanding payment, at clause 14.5.

21. Clause 15 additionally set out the consequences of termination, to include the termination of the licence at clause 15.2. By clause 15.7, the termination of the Reseller Agreements would not affect any "*claims or liabilities of a party arising out of or in respect of any breach of* [the Reseller Agreement] …", including breach of clause 10.5.

**III.    PERFORMANCE OF THE RESELLER AGREEMENTS**

22. In reliance upon the First Reseller Agreement, Pinewood AP entered into a total of nine Customer Contracts, covering 631 user accounts across Hong Kong, Vietnam, Thailand and the Philippines, as follows:

    22.1    Kingsway Cars Limited (Tesla) in Hong Kong, on 26 September 2017;

    22.2    All British Cars, Inc in the Philippines, on 26 December 2017;

    22.3    Kingsway Cars Limited (Lamborghini) in Hong Kong, on 31 January 2018;

    22.4    AAS Auto Service Co., Ltd. in Thailand, on 24 July 2018;

    22.5    Bangkok Riders Co., Ltd & Eastern Thai Riders Co., Ltd. in Thailand, on 24 July 2018;[3]

    22.6    Richco Group (Thailand) Company Limited in Thailand, on 27 August 2018;

    22.7    Kingsland Cars (Guangzhou) Limited in Hong Kong, on 10 December 2018;

    22.8    Headquarters Motors Limited in Hong Kong, on 7 May 2019;

    22.9    Prestige Sports Cars Company Ltd in Vietnam, on 10 June 2019;

23.    In reliance upon the Second Reseller Agreement, Pinewood AP entered into Framework Agreements with three Original Equipment Manufacturers ("**OEMs**") in Japan:

    23.1    Porsche Japan K.K., on 7 August 2020;

    23.2    Jaguar Land Rover Japan Limited, on 23 December 2020; and

    23.3    Volkswagen Group Japan K.K. and Audi Japan K.K., on 31 October 2021.

24.    Pinewood AP also entered into, through its wholly owned Japanese subsidiary, Pinewood Technologies Japan Limited, thirty Customer Contracts with Jaguar Land Rover Japan or Porsche Japan motor vehicle dealerships, covering 764

---

[3] Pinewood AP does not currently hold a copy of this Customer Contract in its possession and so is unable to provide it by way of Initial Disclosure.

user accounts, far in excess of the sales targets in clause 5 of the Second Reseller Agreement.

25. Pinewood AP expended considerable time, effort and financial resources in performing its obligations under the Reseller Agreements, including marketing the Pinewood DMS to potential customers, and hiring employees with specialist technical and language skills. Pinewood AP also engaged extensively with Pinewood UK in respect of opportunities to contract with new customers and the Development Items needed to enable the Pinewood DMS to be launched with contracted customers.

26. Pinewood UK has breached its obligations under the Reseller Agreements: the Update Obligation, the Legal Requirement Obligation, the Franchise Standards Obligation, the Localisation Obligation and the SGSA, as follows.

*The Update Obligation*

27. In breach of the Update Obligation in each of the Reseller Agreements, Pinewood UK failed to provide substantive updates to Pinewood AP as regards the progress of Development Items in the manner required or at all:

    27.1 On 7 August 2021, Mr Peter Thomas of Pinewood UK provided a "Development Status Update", setting out the then status of work on Development Items for Japan and Vietnam.

    27.2 On 6 December 2021, Pinewood AP's solicitors, King & Spalding International LLP, wrote to Pinewood UK explaining that it had failed to meet its promised delivery dates and had failed to provide any firm timeline as to when delivery of the Japan localisation would be possible.

    27.3 Pinewood UK has since failed to provide any further update setting out the status of outstanding development work. Consequently, Pinewood AP has been unable to inform its customers when the delivery of Development Items will be completed.

*The Legal Requirements Obligation*

28. In breach of the Legal Requirements Obligation in each of the Reseller Agreements, Pinewood UK failed to implement development items required to ensure that the Pinewood DMS complied with legal requirements in Thailand, Vietnam, the Philippines, Hong Kong and Japan:

    28.1 Since the First Reseller Agreement was concluded on 28 July 2017, Pinewood AP has given Pinewood UK notice of Development Items that are necessary to meet local legal requirements.

    28.2 As of the date of termination of the First Reseller Agreement, Pinewood UK had failed to complete certain legally required Development Items in the relevant Territories, with some items awaiting completion for over three years.

    28.3 Since the Second Reseller Agreement was concluded on 8 January 2019, Pinewood AP has given Pinewood UK notice of Development Items that are necessary to meet local legal requirements in Japan.

    28.4 As of the date of termination of the Second Reseller Agreement, Pinewood UK had also failed to complete certain legally required Development Items in Japan.

*The Franchise Standards and Localisation Obligations*

29. In breach of the Franchise Standards Obligation in the Second Reseller Agreement, Pinewood UK has failed to use its best endeavours to make any necessary changes to ensure that the Pinewood DMS met the vehicle manufacturer standards of the franchises held by Contracting Customers in Japan. Pinewood UK has also failed to complete Japan Localisation Items, in breach of the Localisation Obligation:

29.1 Since the Second Framework Agreement was concluded, Pinewood UK has been required to implement Japan Localisation Items required for the Pinewood DMS to be launched in Japan.

29.2 Since the first OEM was contracted on 7 August 2020, Pinewood UK has been required to deliver Integration Items.

29.3 In January 2021, Pinewood UK made a firm commitment to deliver the Japan Localisation Items and the Integration Items for Porsche Japan (the first OEM in Japan to have been contracted) by July/August 2021.

29.4 On 7 August 2021, Mr Thomas provided the substantive development update, which confirmed that (i) the majority of the Japan Localisation Items had not been completed; (ii) certain elements of the Porsche Japan Integration Items had not been started; and (ii) none of the Jaguar Land Rover Japan Integration Items had been completed.

29.5 Pinewood UK then abandoned any pretence that it was willing to perform or capable of performing the Franchise Standards Obligation, refusing to attend any meetings that Pinewood AP had arranged with Jaguar Land Rover Japan and Volkswagen / Audi Japan to discuss their development requirements.

30. As of the date of termination of the Second Reseller Agreement (19 July 2022), the Integration Items had not been fully completed for any of the OEMs and the Japan Localisation Items had not been delivered, in addition to outstanding legally required Development Items, such that none of the contracted dealerships were live on the Pinewood DMS.

*SGSA*

31. In breach of the implied term of reasonable care and skill under section 13 SGSA, Pinewood UK failed to dedicate an appropriate level of financial and

human resource to the development of the Pinewood DMS for resale in the territories covered by the Reseller Agreements:

31.1   Paragraphs 27 to 30 are repeated. Pinewood UK failed to deliver Development Items.

31.2   It is to be inferred, from Pinewood UK's conduct and communications between the parties, that Pinewood UK failed to deliver such Development Items because it had not assigned sufficient resources to the development of the Pinewood DMS for customers in the Asia Pacific region.

32.   In breach of section 14 SGSA, Pinewood UK failed to complete Development Items within a reasonable time.

### IV.   TERMINATION

33.   Pinewood UK's breaches of the Second Reseller Agreement entitled Pinewood AP to terminate under clause 14.1 and at common law, which it duly did by Legal Notice dated 19 July 2022 (the "**Japan Termination Notice**"). The Japan Termination Notice was compliant with the terms of the Second Reseller Agreement.

34.   By the Japan Termination Notice, Pinewood AP stated that Pinewood UK's breaches of the Second Reseller Agreement had deprived it of substantially all the benefit of the Second Reseller Agreement, so as to amount to a repudiatory breach:

34.1   Pinewood UK's failure to deliver OEM Integration Items and Japan Localisation Items had prevented Pinewood AP from launching the Pinewood DMS in Japan, nearly two years on from the date that the first Framework Agreement had been signed.

    34.2    Despite Pinewood AP's requests, Pinewood UK failed to provide any indication, binding or otherwise, as to when the necessary development items could or would be completed.

    34.3    As no Japanese dealerships went live, Pinewood AP was unable to charge recurring fees to the dealerships, whilst continuing to incur costs in performance of its own contractual obligations.

35.    Alternatively, and without prejudice to the position at paragraph 34 above, Pinewood UK's communications and conduct amounted to an unequivocal intimation of its lack of intention and/or inability to deliver required development items such as to amount to a renunciation of the Second Reseller Agreement.

36.    On 21 July 2022, Pinewood UK sent a notice to Pinewood AP denying that Pinewood AP had the right to terminate the Second Reseller Agreement under clause 14.1 and/or at common law and that the Japan Termination Notice itself was a repudiatory breach, which Pinewood UK had elected to accept.

## V.    LOSS AND DAMAGE

37.    By reason of the breaches set out at paragraphs 27-32 above, Pinewood UK has caused Pinewood AP loss and damage, in a sum presently calculated at approximately USD 312.7 million, comprising:

    37.1    Damages for costs and expenses incurred by Pinewood AP in reliance on Pinewood UK's anticipated performance of clause 10.5, currently assessed in the sum of at least USD 7.2 million;

    37.2    Lost profits under the Second Reseller Agreement currently assessed in the sum of USD 32.5 million, as well as lost profits arising out of the failure of the launch of the Pinewood DMS in Japan with contracted customers under the Second Reseller Agreement. This has been assessed

    based on the pricing in the Framework Agreements and is currently assessed in the sum of at least USD 85.8 million.

    37.3    Lost profits under the First Reseller Agreement, currently assessed in the sum of at least USD 187.2 million.

38.    Pursuant to PD16 paragraph 9.1, the sterling equivalent of the sums claimed at paragraph 37 above is at least GBP 259,998,337.07, calculated at the Bank of England spot rate as of 19 July 2022.

39.    Pinewood AP additionally seeks declarations that (i) Pinewood UK has breached the terms of the Reseller Agreements and/or the terms implied into them by statute in the manner set out at paragraphs 27-32 above; and (ii) the Second Reseller Agreement was lawfully terminated by Pinewood AP.

**AND THE CLAIMANT CLAIMS:**

(1) Declaratory relief as set out at paragraph 39 above.

(2) Damages as set out at paragraph 37 above.

(3) Interest on the sums above pursuant to section 35A of the Senior Courts Act 1981, at such rate or rates and for such period or periods as the Court sees fit.

(4) Such further or other relief as the Court sees fit.

(5) Costs.

        **KING & SPALDING INTERNATIONAL LLP**
        **10 AUGUST 2022**

**Statement of Truth**

The Claimant believes that the facts stated in this these Particulars of Claim are true. The Claimant understands that proceedings for contempt of court may be brought against anyone who makes, or causes to be made, a false statement in a document verified by a statement of truth.

I am duly authorised by the Claimant to sign this statement of truth on its behalf.

Signed: _____   Date: 10 August 2022
**Name: David D. Neilsen**
**Position: Director, Pinewood Technologies Asia Pacific Limited**

**Served this 10th day of August 2022**
King & Spalding International LLP
125 Old Broad Street,
London EC2N 1AR
<u>Solicitors for the Claimant</u>
